**CONSUMERS UNION OF UNITED STATES, INC., Plaintiff,**

v.

**G. William MILLER et al., Defendants.**

**Civ. A. No. 78–2188.**

United States District Court,
District of Columbia.

July 17, 1979.

5.   See notes 1 and 2, *supra.*

Mark Cymrot, Washington, D. C., for plaintiff.

A. Patricia Frohman, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This is a complaint for declaratory and injunctive relief challenging a final rule and interpretation amending section 226.9 of Regulation Z, which was adopted by defendant Board of Governors of the Federal Reserve System ("the Federal Reserve Board" or "the Board") on July 26, 1978 and became effective on August 3, 1978. 43 Fed.Reg. 34111 (1978). The amendment creates an exception to the requirement that in every credit transaction in which a security interest is taken in the consumer's residence, the consumer shall have three business days from completion of the trans-

action in which to rescind.[1] The amendment exempts open end credit transactions in which the seller and creditor are not the same or related persons if the creditor gives the consumer appropriate disclosure at specified times.

Plaintiff Consumers Union ("CU"), a consumer information and education group, has brought suit alleging that the Board in promulgating this regulation exceeded its statutory authority under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* (1976). Plaintiff also alleges that the regulation was promulgated in violation of the requirements under the TILA for creating exceptions and in violation of the procedural requirements of the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* (1976).

Presently before the Court is defendants' motion to dismiss or, in the alternative, for a stay. Defendants seek dismissal or a stay because on February 15, 1979 the Board published notice of proposed rulemaking concerning whether to suspend or modify the regulation in question. 44 Fed.Reg. 9761 (1979).[2] Public comments were solicited on this proposal and accepted until May 31, 1979. After reviewing the comments received, the Board must decide whether to suspend or to modify the amendment or to leave the regulation in its present form.

Defendants contend that dismissal is required because none of the issues raised in the Complaint is ripe for judicial resolution given the pending proposal to suspend the amendment. They also suggest that plaintiff lacks standing to maintain this action. For the reasons set forth below, the Court concludes that neither argument is well-taken and therefore denies defendants' motion to dismiss.

## MERITS

### A. Ripeness and Exhaustion.

Defendants argue that the Court lacks jurisdiction over the subject matter of this lawsuit because of the proposal currently pending before the Board to suspend or modify the challenged amendment. They contend that none of the issues raised in the complaint is ripe for judicial resolution because the agency might grant the requested relief or otherwise alter the issues presented. In either event defendants suggest that judicial resources would be needlessly expended and that plaintiff would suffer no hardship from withholding judicial review at this time. Defendants also argue that judicial review should be denied because plaintiff is required to exhaust the available administrative remedies presented by the Federal Reserve Board's proposal to rescind. Finally, they suggest in the alternative that the Court should stay judicial ac-

---

1. Section 125 of the Truth in Lending Act ("TILA") provides that in any consumer credit transaction in which the consumer's residence is taken as security:

    [T]he obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this chapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

    15 U.S.C. § 1635 (1976). Regulation Z, 12 C.F.R. § 226 (1976), similarly provided that consumers who pledge their homes as security for credit have a three-day "cooling-off period" during which they may rescind each transaction and during which the proceeds of the loan may not be disbursed except in escrow.

    On December 9, 1977 the Federal Reserve Board proposed to modify Regulation Z in those cases in which a lender extends open-end credit secured by an interest in a consumer's home. The proposed amendment would require notice of the right to cancel in only three instances: when an open-end credit plan is first opened; when the credit limit is increased; and when a security interest in a home is added to an open-end credit arrangement. 42 Fed.Reg. 62146 (1977). On July 26, 1978 the Board formally adopted a final rule amending Regulation Z, which became effective on August 3, 1978. The amendment as finally promulgated only exempts open-end credit transactions in which the seller and the creditor are not the same or related persons and requires that the three-day cooling off period be given at the three times enumerated above and also prior to any changes in the terms of the account. The amendment also requires that customers be notified at least once a year that their account is secured by their house and that failure to pay any outstanding balance could result in loss of the property. 42 Fed.Reg. 34113 (1978).

2. This lawsuit was filed on December 5, 1978.

tion until the Board acts on the pending proposal.

■ In determining whether a challenge to an administrative regulation is ripe for judicial review a twofold inquiry must be made. First, it is necessary to determine whether the issues presented are appropriate for judicial resolution, and second, the Court must assess the hardship to the parties if judicial relief is denied. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Ass'n. v. Gardner,* 387 U.S. 158, 162, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). The purpose of this doctrine is

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner,* 387 U.S. at 148–49, 87 S.Ct. at 1515.

The challenged amendment to Regulation Z was promulgated in a formal manner after notice and evaluation of submitted comments and is a final agency action under section 10 of the Administrative Procedure Act, 5 U.S.C. § 704 (1976). Plaintiff's complaint presents the purely legal question of whether the Federal Reserve Board, in promulgating the regulation, acted in excess of its statutory authority. In *Toilet Goods Ass'n v. Gardner, supra,* the Supreme Court found that the issues were not ripe because the legal issues had not been placed in a specific factual context and some additional act was required by the agency or by the party claiming to be affected. 387 U.S.

at 163–64, 87 S.Ct. 1520. This is not the case here, where the challenged regulation is presently in force.

■ Defendants contend that the issues are not fit for judicial review because the Board is currently reviewing a proposal to suspend or modify the amendment.[3] Although they suggest that the amendment may be rescinded or modified, it is equally probable that it will be retained in its present form. The possibility of recision or modification is not enough to preclude judicial review. While the amendment remains in effect, it presents the legal issues of whether it was properly promulgated and whether creditors are offering home secured credit without the consumer rights secured by the TILA.

■ Contrary to defendants' assertion, there would be clear hardship to consumers of credit if judicial review were denied. If the challenged amendment were subsequently rescinded by the Board or enjoined by judicial action, consumers who were deprived of their recision rights under the amendment would have no recourse against creditors for damages.[4] Moreover, if CU members presently denied recision rights cannot repay credit drawn on home-secured open-end credit accounts, creditors could foreclose on their homes. These are certainly "effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner,* 387 U.S. at 148–49, 87 S.Ct. at 1515. Because of these present injuries, judicial review should not be denied and a stay of judicial proceedings is similarly inappropriate.

■■ Defendants also urge that plaintiff should be required to exhaust its availa-

---

**3.** The Board could not have taken action on February 15, 1979 to suspend the amendment immediately because the suspension or repeal of a rule constitutes a rulemaking procedure subject to the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. §§ 551(5), 553 (1976).

**4.** The TILA provides immunity for actions taken in compliance with Federal Reserve Board regulations:

> No provision of this section or section 112 imposing any liability shall apply to any action done or omitted in good faith in conformity with any . . . regulation . . . by the Board . . . , notwithstanding that after such act or omission has occurred, such . . . regulation . . . is amended, rescinded, or determined by judicial or other authority to be invalid for any reasons.
> 15 U.S.C. § 1640(f) (1976).

ble administrative remedies by awaiting the Board's action on the proposal to rescind or modify. CU has filed comments in both the original rulemaking and in the proposal to suspend or modify. But the opportunity to petition an agency to reconsider or modify final agency rules does not permit invocation of the doctrine of exhaustion of administrative remedies. *See International Harvester Co. v. Ruckleshaus,* 155 U.S.App.D.C. 411, 428, 478 F.2d 615, 632 (D.C.Cir.1973). Similarly, exhaustion is not required when an additional administrative remedy affords parties the opportunity to reiterate their views in the same forum to the same government entity. *Consumers Union v. Cost of Living Council,* 491 F.2d 1396 (Em. App.), *cert. denied,* 416 U.S. 984, 94 S.Ct. 2387, 40 L.Ed.2d 761 (1974).

### B. *Standing.*

Alternatively, defendants have moved to dismiss on the grounds that plaintiff CU lacks standing to maintain this action. Defendants suggest that the interest CU seeks to protect is not germane to the organization's purpose and that standing therefore should be denied under *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), and *Health Research Group v. Kennedy,* 82 F.R.D. 21 (D.D.C.1979). Defendants also suggest that even if the requirements of organizational standing set forth in the cited cases are satisfied, plaintiff's members have not suffered the "injury in fact" necessary to support standing in this case.

The Supreme Court has recognized that a voluntary membership organization has standing to maintain an action as the representative of its members:

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members. . . The association must allege that its members, or any one of them are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. . . . So long as this can be

established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2218, 45 L.Ed.2d 343 (1975). The Court went on to note that the standing of an organization to invoke judicial review may depend on the nature of the relief sought and that if "the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id.* at 515, 95 S.Ct. at 2213.

In a recent decision relied on by defendants, the Supreme Court has gone on to hold that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit. *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). These requirements are satisfied here.

In this lawsuit CU seeks declaratory and injunctive relief on behalf of its members who "enter into consumer credit transactions subject to the requirements of the Truth in Lending Act, including Section 125 of the Act, 15 U.S.C. § 1635." Complaint ¶ 3. The alleged loss of rights under the Act would represent "injury in fact" to the individual CU members. Litigation in the courts has frequently been employed by CU as a means of representing the interests of its members and the subject of consumer credit is germane to the organization's purpose as expressed in CU's Certificate of

Incorporation and activities over the years.[5] The participation of individual members is not required in this suit for declaratory and injunctive relief, the type of relief traditionally sought by associations that have been found to have standing to represent the interests of their members. *Warth v. Seldin,* 422 U.S. at 515, 95 S.Ct. at 2213.

■ The recent decision of the district court in *Health Research Group v. Kennedy,* 82 F.R.D. 21 (D.D.C.1979), does not alter the traditional standing requirements for membership organizations seeking to represent the interests of their members. That decision concerned the representational standing of a nonmembership organization and the court concluded that the requisite "substantial nexus" between the allegedly injured parties and the organizational plaintiff was missing. *Id.* at 26. The court noted that this nexus is normally satisfied by "actual membership or its functional equivalent measured in terms of control." *Id.* In this case membership establishes the nexus that enables CU to bring suit on its members' behalf.

C. *Protective Order.*

■ On December 5, 1978 plaintiff served a first set of interrogatories, seeking information concerning the decision to amend Regulation Z. Defendants have sought a protective order relieving them from answering or objecting to these interrogatories on the ground that plaintiff here seeks review of final agency action and that such review must be based solely on the administrative record, which has already been provided.[6] The Court has reviewed the interrogatories and concludes that they are reasonably calculated to lead to the discovery of admissible evidence as required by Fed.R.Civ.P. 26(b). Accordingly, the Court directs that defendants file their answers or objections to these interrogatories within thirty (30) days of the date of this Memorandum and Order.

5. *See* Plaintiff's Reply Memorandum in Opposition to Defendants' Motion to Dismiss, Exh. A, CU Certificate of Incorporation; *id.,* Exh. B, Affidavit of Alan Mark Silbergeld.

6. Alternatively, defendants moved to stay discovery until disposition of their motion to dismiss, which this day is denied.