REVISED

United States Court of Appeals,

Fifth Circuit.

No. 96-40590.

FRIENDS OF THE EARTH, INC., Plaintiff-Appellant,

v.

CHEVRON CHEMICAL CO., Defendant-Appellee.

Dec. 10, 1997.

Appeal from the United States District Court for the Eastern District of Texas.

Before REAVLEY, BARKSDALE and STEWART, Circuit Judges.

REAVLEY, Circuit Judge:

Pursuant to the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(a), Friends of the Earth, Incorporated (FOE) sued Chevron Chemical Company for violating the terms of its National Pollution Discharge Elimination System (NPDES) permit. After a three-day bench trial, the district court dismissed the case for lack of subject matter jurisdiction on the grounds that FOE lacked associational standing because it had no members under corporate law. We reverse and remand.

## I. Background

FOE is a non-profit corporation organized under the laws of the District of Columbia to promote a broad agenda of environmental awareness and improvement projects. The organization has pursued

this agenda in the federal courts.[1]

Chevron manufactures polyethylene in its facility in Orange, Texas. Under its NPDES permit, Chevron discharges the process water, combined with any stormwater, into Round Bunch Gully, which flows into Cow Bayou and then down to the Sabine River and the Sabine Lake. The permit includes mass limitations on the amount of total suspended solids (TSS) that Chevron can discharge. Between October 1990 and January 1994, Chevron exceeded its TSS limits. In July 1994, after giving the required 60 days notice to the EPA, FOE filed a private civil enforcement action against Chevron pursuant to § 505 of the Clean Water Act, 33 U.S.C. § 1365, alleging violations of Chevron's NPDES permit. FOE asserted standing as a representative of its members, naming four members who had allegedly been injured by Chevron's discharges. FOE filed a second suit in September 1994, and the district court consolidated the two cases.

In an order signed September 1, 1995, the district court denied Chevron's motion for summary judgment asserting that FOE lacked constitutional standing. The court concluded in a careful opinion that FOE had constitutional standing to pursue the citizens' suit.[2] After a motion to clarify the order, the court issued a second order stating that "a fact issue remains regarding Plaintiffs' standing."

---

[1] *See, e.g., Friends of the Earth v. Consolidated Rail Corp.,* 768 F.2d 57 (2d Cir.1985).

[2] *Friends of the Earth, Inc. v. Chevron Chem. Co.,* 900 F.Supp. 67, 74-76 (E.D.Tex.1995).

The day before trial, Chevron filed a supplemental memorandum arguing for the first time that FOE lacked standing to represent the named aggrieved persons because it had no legal members under the corporate laws of the District of Columbia. FOE's bylaws provide that membership requirements shall be set by the board of directors. At that time, FOE's board had never taken any formal affirmative action to comply with its responsibility and authority to determine membership requirements. The officers of FOE simply followed a practice of considering all those who gave a donation, as well as those who had a donation made in their name, to be members.

The district court found that FOE could not meet the associational standing test because it had no members.

## II. Associational Standing

The standing requirement stems from the Article III grant of power to the federal courts over cases or controversies. The standing requirement "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."[3] Further, it "serve[s] as at least a rough attempt to put the decision as to whether review will be sought in

---

[3]*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

3

the hands of those who have a direct stake in the outcome."[4]

In *Hunt v. Washington State Apple Advertising Commission,* the Supreme Court stated that an organization can assert "associational standing" to represent the interests of individuals if it can show that (1) one or more of the organization's members would have standing in his or her own right; (2) the interests which the organization seeks to protect in the lawsuit are germane to the purposes of the organization; and (3) the nature of the case does not require the participation of the individual affected members as plaintiffs to resolve the claims or prayers for relief at issue.[5] The second and third prongs are not disputed in this case. The only issue is whether FOE meets the first prong of the *Hunt* test.

The district court focused on the issue of "membership" within the first prong. The court found that FOE did not have any members under the laws of the District of Columbia and, as a result, did not have any members for purposes of constitutional standing. While a corporation's failure to comply with state and internal rules for identification of its members might be relevant to the issue of whom the corporation represents, we do not believe this defect should overshadow the considerable activities of FOE with and for those persons its officers and staff have consistently considered to be members.

---

[4]*Id.* at 473, 102 S.Ct. at 759 (quoting *Sierra Club v. Morton,* 405 U.S. 727, 740, 92 S.Ct. 1361, 1368-69, 31 L.Ed.2d 636 (1972)).

[5]432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211-12, 45 L.Ed.2d 343 (1975).

4

In *Sierra Association for Environment v. Federal Energy Regulatory Commission,* the Ninth Circuit held that an organization's form under state law does not affect its federal standing.[6]  In that case, the Sierra Association for Environment (SAFE)—a non-profit corporation organized under the laws of the State of California—had been suspended and failed to take the steps necessary to preserve its corporate status under California law. The Ninth Circuit rejected the defendant's argument that SAFE lacked standing, stating:

> SAFE's ability under California law as a suspended California corporation to initiate suit would be relevant if this action were under our diversity jurisdiction.  But because this action arises under federal law, SAFE had capacity to sue as an unincorporated association, and any incapacity under California law is accordingly irrelevant.[7]

The Supreme Court in *Hunt,* while articulating the three-part test for associational standing, elaborated on the "membership" requirement.  In *Hunt,* the Washington State Apple Advertising Commission sought to establish standing to assert the economic interests of Washington apple growers and dealers, much in the way a non-governmental trade association could do.[8]  Yet the Commission was a state agency created by state statute, not a trade association.  The Commission had no "members" under state law, and participation of the apple growers and dealers in the Commission came, not through voluntary contributions, but rather through

---

[6]744 F.2d 661 (9th Cir.1984).

[7]*Id.* at 662 (citations omitted).

[8]*Hunt,* 432 U.S. at 342-43, 97 S.Ct. at 2440-41.

5

"mandatory assessments."[9]

The Supreme Court rejected the defendant's argument that the Commission was precluded from establishing the requisites of associational standing because it lacked formal membership. Rather, the court performed a functional analysis to determine whether the nature of the relationship between the Commission and the relevant interests of the individual Washington apple growers and dealers satisfied the goals of the constitutional standing requirement. The Court found that the apple growers and dealers possessed "all the indicia of membership," and that "the Commission represents the State's growers and dealers and provides the means by which they express their collective views and protect their collective interests."[10] Thus, the Court concluded, "it would exalt form over substance to differentiate between the Washington Commission and a traditional trade association" for purposes of determining Article III standing.[11] The Supreme Court has reiterated *Hunt*'s three-part test for associational or representational standing.[12]

Chevron has provided no cogent reason to limit the accompanying detailed analysis of the "membership" requirement within that test to the facts of *Hunt.* Every case can be limited

---

[9]Id. at 345, 97 S.Ct. at 2442.

[10]Id. at 344-45, 97 S.Ct. at 2441-42.

[11]Id. at 345, 97 S.Ct. at 2442.

[12]*International Union, United Auto., Aerospace, & Agric. Implement Workers v. Brock,* 477 U.S. 274, 282, 106 S.Ct. 2523, 2528-29, 91 L.Ed.2d 228 (1986).

to its facts and distinguished from later ones.  In this case, the policy underlying the decision in *Hunt,* as well as the decisions in other circuits, supports holding that the "indicia of membership" test is the correct one to apply to determine whether a purported corporation, despite the failure to meet state law requirements, has "members" whose interests it can represent in federal court. As the Third Circuit said in a recent case involving FOE, "[w]e do not accept this formalistic argument because it lacks merit.  To meet the requirements of organizational standing, PIRG and FOE need only prove that their members possess the "indicia of membership' in their organizations."[13]

The next step is to apply the *Hunt* "indicia of membership" test.  The Court in *Hunt* looked to who elected the governing body of the organization and who financed its activities.  The purported members of FOE meet both these elements.  Additionally, the members have voluntarily associated themselves with FOE, in contrast to the apple growers who financed the Commission through mandatory assessments.  The individuals testified in court that they were members of FOE.  FOE has a clearly articulated and understandable membership structure.  This suit clearly is within FOE's central purpose, and thus within the scope of reasons that individuals joined the organization.  For all these reasons, FOE has associational standing to represent its members.

### III. Disposition

---

[13]*Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 119 (3d Cir.1997).

The district court initially decided that the individuals "clearly would have constitutional standing to pursue this action."[14] Were we to review that decision, it would be *de novo*.[15] Because that court now has a full trial record and is in a position to reconsider, if it chooses, constitutional standing together with any other issues reached, we leave further decision to the court on remand.

REVERSED and REMANDED.

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting:

Because FOE did not have the requisite individual members in order to qualify for associational standing, I respectfully dissent.

The central contention made by FOE, and the one upon which the majority relies, is that *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), controls. But, *Hunt* concerned a state agency that was acting similar to a trade association; unlike FOE, it had no mechanism to establish "members" in the traditional sense. Faced with this, the Supreme Court looked to the "indicia of membership" because "*[u]nder the circumstances presented here,* it would exalt form over substance to differentiate between the [state agency] and a traditional trade association...." *Id.* at 345, 97 S.Ct. at 2442 (emphasis added).

---

[14]*Friends of the Earth, Inc.,* 900 F.Supp. at 76.

[15]*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,* 73 F.3d 546, 555 (5th Cir.1996).

8

The majority expands *Hunt* to cover nonprofit corporations, pointing to *Sierra Ass'n for Environment v. Federal Energy Regulatory Comm'n,* 744 F.2d 661 (9th Cir.1984). However, that case involved whether the plaintiff had the *capacity to sue* under FED.R.CIV.P. 17(b)(1); it has little or no bearing on whether the laws regulating nonprofit corporate membership would affect associational standing.

The other, non-binding, authority upon which the majority relies is *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111 (3d Cir.1997). The portion of *Magnesium Elektron* that deals with the expansion of *Hunt* is relegated to two sentences and it does not address the issue presented here: what role by-laws and state law should play in determining nonprofit corporate membership; what the result should be when, as here, procedures for membership are not established or followed; and why *Hunt* should apply to such corporations.

There are sound reasons not to extend *Hunt* to nonprofit corporations. In *Hunt,* the Court's extension of the associational standing doctrine was from a trade association to a state agency that had an established constituency through state enabling legislation. The Court stated: "The *only* question presented, therefore, is whether, on this record, the Commission's status as a state agency, rather than a traditional voluntary membership organization, precludes it from asserting the claims of the Washington apple growers and dealers who form its constituency." 432 U.S. at 344, 97 S.Ct. at 2442 (emphasis added).

9

This extension of "membership" from an association to a certain type of state agency does not as a matter of logic or policy, much less law, continue on to a nonprofit corporation. Associations are far more loosely organized and are not required to follow certain formalities because they do not receive the many benefits of corporate status. A nonprofit corporation, which has a method for selecting its members according to its by-laws and state law, but which has failed to follow this method, should not be entitled to associational standing with respect to persons who are, therefore, non-members, simply because, in certain situations, it may choose to assert these individuals' "indicia of membership". (This principle, of course, would not operate in reverse: an action against an individual who is not a member of such a corporation could not expose the corporation to liability. Needless to say, limiting liability is a primary reason for forming such a corporation, with procedures for determining who is, and who is *not,* a member.)

It is unnecessary to engage in the difficult, and somewhat speculative, application of the "indicia of membership" test when a nonprofit corporation has, or at least should have, a method with which it can clearly, readily, and easily establish its membership. The difficulties associated with this indicia test are demonstrated by the facts presented in this case. Two of FOE's "members" do not appear to have joined until after the last lawsuit in this case was filed. Another's membership is founded on a surprise gift donation on her behalf by another individual, five years prior to the

10

lawsuit. Finding membership based upon these facts is troublesome and most unnecessary.

In response to the quite legitimate concerns expressed by the majority of elevating form over substance, I note the substantial constitutional requirements underpinning this more limited, prudential view of associational standing. Limiting *Hunt* is more than an exercise in formalism or line-drawing; the "indicia of membership" test was a means to allow an entity, with certain membership characteristics, to have standing when, under a traditional view, it otherwise could not. As stated, the same is not true of a nonprofit corporation such as FOE.

Obviously, the Article III "case or controversy" requirement serves many salutary purposes. Not the least of these is ensuring, as the majority notes, that a party has a stake in the outcome; this avoids, among other things, frivolous actions, unreasonable refusals to settle, and proscribed advisory opinions. Extending the "indicia of membership" test to cover persons who could—and should—have been made members by a nonprofit corporation pushes associational standing to a point beyond the "case or controversy" requirements and relieves the plaintiff of some of its Article III standing burden.

For the foregoing reasons, I am of the view that the district court held correctly that FOE lacked associational standing. Accordingly, I respectfully dissent.