**CITY OF WESTWORTH VILLAGE, Texas, Appellant**

v.

**TEXAS VOICES FOR REASON AND JUSTICE, INC., Appellee**

**NO. 02-16-00106-CV**

Court of Appeals of Texas, Fort Worth.

DELIVERED: May 18, 2017

ATTORNEYS FOR APPELLANT: FREDRICK "FRITZ" QUAST, TIM G. SRALLA, ASHLEY D. DIERKER, TAYLOR, OLSON, ADKINS, SRALLA & ELAM, L.L.P., FORT WORTH, TEXAS.

ATTORNEY FOR APPELLEE: RICHARD GLADDEN, LAW OFFICE OF RICHARD GLADDEN, DENTON, TEXAS.

PANEL: WALKER, MEIER, and GABRIEL, JJ.

## OPINION

### LEE GABRIEL, JUSTICE

Texas law requires any person who has committed certain sexual offenses to register as a sex offender. *See* Tex. Code. Crim. Proc. Ann. arts. 62.001(5), 62.051 (West Supp. 2016). In 2007, Appellant City of Westworth Village, Texas, adopted an ordinance prohibiting any person required to register as a sex offender because of an offense involving a victim who was younger than seventeen from establishing a residence within 1,000 feet of any location where children commonly gather. *See* Westworth Vill., Tex., Code of Ordinances ch. 8, art. 8.07, § 8.07.032(a) (2016). A violation of the ordinance constitutes a misdemeanor and subjects violators to a fine not exceeding $500 for each day a violation occurs. *See id.* ch. 8, art. 8.07, § 8.07.036. Appellee Texas Voices for Reason and Justice, Inc. (TVRJ), a Texas nonprofit corporation, sued the City on behalf of its members, claiming the ordinance violates the state constitution. The City filed a plea to the jurisdiction, arguing that TVRJ lacks standing to sue on behalf of its members. The trial court denied the plea, prompting the City to bring this accelerated interlocutory appeal. *See* Tex. R. App. P. 28.1(a); Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2016) (authorizing appeal of an interlocutory order granting or denying a municipality's plea to the jurisdiction).

On appeal, the City contends that TVRJ lacks standing for two reasons. First, the City asserts that the individuals on whose behalf TVRJ has filed suit are not members of, nor do they possess indicia of membership in, TVRJ. And second, even if TVRJ has members, the City maintains that TVRJ nevertheless has failed to demonstrate that any of its members would have individual standing to challenge the ordinance. We conclude that TVRJ lacks standing because the individuals on whose behalf it has filed suit are not members of it and they do not possess sufficient indicia of membership in it. We therefore reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing TVRJ's claims against the City for lack of subject-matter jurisdiction.

## I. STANDARD OF REVIEW

Standing to sue is an element of subject-matter jurisdiction, and a court that lacks subject-matter jurisdiction has no power to decide a case. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Standing is determined at the time suit is filed; if a plaintiff lacks standing at the time suit is filed, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing. *Martin v. Clinical Pathology Labs, Inc.*, 343 S.W.3d 885, 888 (Tex. App.—Dallas 2011, pet. denied); *see also Tex. Ass'n of Bus. v. Tex. Air. Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993) ("Standing is determined at the time suit is filed in the trial court, and subsequent events do not deprive the court of subject matter jurisdiction."). A defendant may contest a plaintiff's standing to sue by filing a plea to the jurisdiction. *See, e.g., Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)

(recognizing that a challenge to a trial court's subject-matter jurisdiction "is properly asserted in a plea to the jurisdiction"). We review a trial court's ruling on a plea to the jurisdiction de novo. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016).

■ A plea to the jurisdiction can contest a trial court's subject-matter jurisdiction on two separate grounds: it can challenge the plaintiff's pleadings or it can challenge the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 226–27; *Univ. of Tex. at Arlington v. Williams*, 455 S.W.3d 640, 643–44 (Tex. App.—Fort Worth 2013), *aff'd*, 459 S.W.3d 48 (Tex. 2015).

■ When a plea to the jurisdiction challenges the pleadings, our task is to determine whether the pleader has met his burden to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. We answer that inquiry by looking to the plaintiff's pleadings, construing them liberally in favor of the plaintiff and looking to the pleader's intent. *Id.* Viewed through that lens, if the pleadings contain facts that affirmatively demonstrate the court's jurisdiction to hear the cause, the plea to the jurisdiction should be denied. *See id.*; *Kirby Lake Dev. v. Clear Lake City Water*, 321 S.W.3d 1, 3–4 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 320 S.W.3d 829 (Tex. 2010). If, however, the pleadings do not affirmatively demonstrate the court's jurisdiction but also do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be given an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. But if the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction may be granted without allowing the

plaintiff an opportunity to amend. *Id.* at 227.

■ When a plea to the jurisdiction challenges the existence of jurisdictional facts, we will consider evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* (citing *Bland*, 34 S.W.3d at 555). In such cases, we will only consider evidence relevant to the issue of jurisdiction. *Bland*, 34 S.W.3d at 555; *see Miranda*, 133 S.W.3d at 227. In considering that evidence, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question on the issue of jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. But if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Id.* at 228.

With our standard of review in mind, we turn now to the law of associational standing.

## II. THE LAW OF ASSOCIATIONAL STANDING

■ Texas law provides that in certain circumstances, an association may have standing to sue on behalf of its members. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446–47. To determine whether an association has standing to sue on behalf of its members under the Texas constitution, our supreme court has adopted the three-pronged test the United States Supreme Court articulated in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), that the federal courts apply to analyze the issue of associational standing under the federal Constitution.

*See Tex. Ass'n of Bus.*, 852 S.W.2d at 447. Under that test, an association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 447 (quoting *Hunt*, 432 U.S. at 343, 97 S.Ct. at 2441).

## III. MEMBERSHIP AND INDICIA OF MEMBERSHIP

■ In its first issue, the City challenges the existence of a jurisdictional fact, contending that TVRJ lacks standing to sue on behalf of its members for the simple reason that it does not actually have any members. Before we can decide whether TVRJ has members for purposes of associational standing, we must first address a preliminary question: what analysis applies to determine whether an organization has members for purposes of associational standing? To our knowledge, no Texas court has addressed this precise question,[1] but even so, we are not completely without bearings. In resolving novel questions regarding standing, the Texas

supreme court often looks to the "more extensive jurisprudential experience of the federal courts" for guidance. *Tex. Ass'n of Bus.*, 852 S.W.2d at 444; *accord Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). We will therefore look to the jurisprudence of the federal courts for any guidance they may provide.

### A. HOW FEDERAL COURTS ANALYZE "MEMBERSHIP" FOR ASSOCIATIONAL STANDING PURPOSES

■ Our review of relevant decisions from the federal courts reveals that those courts' analytical approach to the question of whether an organization has members for purposes of associational standing generally differs depending upon the answer to another inquiry: whether the organization is a traditional membership organization (i.e., whether it has "traditional members" or "members in the traditional sense"). *See, e.g., Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F.Supp.2d 1, 27–29 (D.D.C. 2009); *Cal. Sportfishing Prot. All. v. Diablo Grande, Inc.*, 209 F.Supp.2d 1059, 1065–66 (E.D. Cal. 2002). If the organization is a traditional voluntary membership organization, then no further inquiry into the issue of

---

1. We have already observed that in *Texas Association of Business*, our supreme court adopted as the test for associational standing under the Texas constitution the three-pronged test the United States Supreme Court articulated in *Hunt*. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 447. We note that with respect to the issue of standing, the specific question *Texas Association of Business* resolved was whether the Texas Association of Business, a Texas nonprofit corporation, had standing to sue on behalf of its members under the Texas constitution. *See id.* at 443–48. It was in deciding how to answer that question that the supreme court expressly adopted and applied the *Hunt* test. *See id.* at 447. There was no dispute that the individual members on whose behalf the association had filed suit were, in fact, members of the association. Thus, in

applying the first prong of the associational standing test, the supreme court's analysis did not elaborate on that particular issue. Rather, the court took for granted the fact that the individual members on whose behalf the Texas Association of Business had allegedly filed suit actually were members and focused its analysis solely on whether the association's individual members had sustained sufficient injury such that they would have standing to sue in their own behalf. *Id.* at 447 (holding that the association met the first prong of the *Hunt* test because the evidence showed that some of its members had been assessed administrative penalties under the challenged statutes and additionally because the association's pleadings alleged that other of its members remained at substantial risk of penalty).

membership is necessary for purposes of associational standing. *See, e.g., Brady Campaign to Prevent Gun Violence*, 612 F.Supp.2d at 27–29; *Cal. Sportfishing Prot. All.*, 209 F.Supp.2d at 1065–66. If, however, the organization is not a traditional voluntary membership organization, then it nevertheless can establish standing to sue on behalf of the individuals it seeks to represent by showing that it is the "functional equivalent" of a traditional membership organization. *See Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21, 25–26 (D.C. Cir. 2002) ("In determining whether an organization that has no members in the traditional sense may nonetheless assert associational standing, the question is whether the organization is the functional equivalent of a traditional membership organization.") (citing *Hunt*, 432 U.S. 342–45, 97 S.Ct. 2434); *see also Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 828–29 (5th Cir. 1997) (stating that in *Hunt*, the Supreme Court performed a functional analysis to determine whether an association whose constituents were not members in the traditional sense nevertheless had standing to sue on their behalf). Having found no controlling Texas authority addressing the question of how Texas courts should analyze whether an association has members for purposes of associational standing under our state constitution, we will adopt here the analytical approach of the federal courts described above. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444 (looking to the jurisprudential experience of the federal courts for guidance on question of standing); *Brown*, 53 S.W.3d at 305 (looking to federal standing requirements to guide decision on novel standing issue). We now apply that analysis to the City's first issue.

## B. Traditional Membership Organization

TVRJ has filed this lawsuit in its capacity as a Texas nonprofit corporation incorporated under chapter 22 of the Texas Business Organizations Code. That statute provides that a nonprofit corporation can be formed with members or without members. *See* Tex. Bus. Orgs. Code Ann. § 22.151(a) (West 2012) ("A [nonprofit] corporation may have one or more classes of members or may have no members."). A "member" of a nonprofit corporation is defined as "a person who has membership rights in the nonprofit corporation under its governing documents." *Id.* § 1.002(53)(B) (West Supp. 2016). A nonprofit corporation's certificate of formation and its duly adopted bylaws are included among its governing documents. *See id.* § 1.002(36)(A) (West Supp. 2016). And with an exception not applicable here, when a provision of a nonprofit corporation's certificate of formation conflicts with its bylaws, the provision in the certificate of formation controls. *Id.* § 22.103(a) (West 2012).

TVRJ's certificate of formation affirmatively reflects that it was formed as a Texas nonprofit corporation that would have no members. Although TVRJ provided evidence that it had amended its bylaws to establish a "general membership" prior to filing this suit, it provided no evidence that it had also amended its certificate of formation to provide that it was a nonprofit corporation with members. *See id.* § 22.107 (West 2012) (providing the means by which a domestic nonprofit corporation that has no members or voting members may amend its certificate of formation). Thus, a conflict exists between TVRJ's certificate of formation and its bylaws on the question of whether it has members. Because a nonprofit corporation's certificate of formation controls over an inconsistent bylaw, TVRJ's certificate of formation therefore conclusively proves that no per-

son had membership rights in it at the time it filed this suit.

In short, TVRJ filed this suit in its capacity as a Texas nonprofit corporation seeking to represent its members. But under Texas law, TVRJ has no members. Thus, we simply cannot conclude that TVRJ has members when the law under which it was created and by which it is governed says that it does not. We therefore conclude that TVRJ does not qualify as a traditional membership organization for purposes of associational standing. *See Friends of the Earth, Inc.*, 129 F.3d at 828–29 (applying *Hunt*'s "indicia of membership" test where District of Columbia nonprofit organization had no members under the corporate laws of the District of Columbia).

## C. FUNCTIONAL EQUIVALENCY

 As we explained above, our conclusion that TVRJ has no traditional members does not end the associational standing inquiry, for even though it lacks members in the traditional sense, TVRJ may nevertheless establish associational standing if it is the functional equivalent of a traditional membership organization. *See Fund Democracy, LLC*, 278 F.3d 25–26; *Friends of the Earth, Inc.*, 129 F.3d at 828–29. An organization constitutes the functional equivalent of a traditional membership organization if (1) it serves a specialized segment of the community; (2) its constituents possess all of the "indicia of membership" in an organization; and (3) its fortunes are closely tied to those of its constituency. *See Washington Legal Found. v. Leavitt*, 477 F.Supp.2d 202, 208 (D.D.C. 2007). Here, the City argues that the individuals on whose behalf TVRJ has filed suit in this case do not possess "indicia of membership" sufficient to establish TVRJ as the functional equivalent of a traditional membership organization for purposes of associational standing.

### 1. Indicia of Membership

The indicia-of-membership test is derived from the Supreme Court's decision in *Hunt*, in which the Washington State Apple Advertising Commission, a statutorily-created state agency, had brought a lawsuit on behalf of Washington's apple growers and dealers, who were not members of the Commission in the traditional sense. *See* 432 U.S. at 336–37, 339, 344, 97 S.Ct. at 2438–39, 2442. The Court concluded that the fact that the growers and dealers were not members of the Commission in the traditional sense did not deprive the Commission of standing to sue on their behalf because the growers and dealers possessed "all of the indicia of membership in an organization." *Id.* at 344–45, 97 S.Ct. at 2442. That is, "[t]hey alone elect[ed] the members of the Commission; they alone [could] serve on the Commission; they alone finance[d] its activities, including the costs of [the Commission's] lawsuit, through assessments levied upon them." *Id.* at 344–45, 97 S.Ct. at 2442. Based upon those facts, the Supreme Court concluded that "[i]n a very real sense ... the Commission represent[ed] [Washington's apple] growers and dealers and provide[d] the means by which they express[ed] their collective views and protect[ed] their collective interests." *Id.* at 345, 97 S.Ct. at 2442.

### 2. Relevant Evidence

In response to the City's plea to the jurisdiction, TVRJ submitted two pieces of evidence relevant to the indicia-of-membership issue: a copy of its bylaws as amended on December 1, 2015, and the affidavit of its executive director, Mary Sue Molnar. The bylaws provide that TVRJ shall be governed by a board of directors consisting of at least three and

no more than nine individuals. Directors serve two year terms and are not subject to term limits. They can resign from the board at any time; they can also be involuntarily removed from the board, but only by a majority vote of the directors. Vacancies on the board are filled by a majority vote of the directors, and the bylaws can be altered, amended, or repealed only by a majority vote of the directors. TVRJ amended its bylaws on December 1, 2015, to provide for a general membership. General membership is available to all "individual persons who have expressed a desire to join [TVRJ] and share its commitment to advance the aims and purposes of [TVRJ]." Members have the rights "to express their collective views and protect their collective interests, in addition to supporting [TVRJ] financially through voluntary contributions, in order to ensure the responsiveness of [TVRJ] to its [m]embership."

In her affidavit, Molnar acknowledged that TVRJ's general members have no voting rights. However, she also stated that TVRJ's general members indirectly control TVRJ's direction and activities because (1) it relies exclusively on its members for donations, for fundraising activities, and to assert the influence of the organization collectively; and (2) it depends upon its general members to appear before government agencies, and those appearances are one way that it asserts its organizational influence and advances its organizational objectives. For those reasons, Molnar averred, all of TVRJ's directors are "highly sensitive to the concerns expressed by TVRJ's [general] members" because the board knows that if it "is not responsive to the desires and expectations of [the] general membership, [TVRJ] simply could not continue to exist or continue to assert its influence to bring about badly needed reform of sex offender laws in Texas." Molnar stated that TVRJ shares information with its general members at its meetings, that consequently those members are "kept fully abreast of the concerns and desires of all TVRJ members," and that the general members are also fully informed of the board's activities through regular mass emails. Finally, Molnar averred that "[i]t was with the full knowledge, approval, and direction of a vast majority of the general membership" that on November 4, 2015, the board of directors authorized the filing of this lawsuit.

### 3. TVRJ's General Members Lack Indicia of Membership

The above evidence reveals that the relationship between TVRJ and its purported members materially differs from the relationship between the Washington State Apple Advertising Commission and Washington's apple growers and dealers in *Hunt*. In *Hunt*, only the individuals on whose behalf the Commission had filed suit—Washington's apple growers and dealers—had the power to determine who served on the Commission. 432 U.S. at 344, 97 S.Ct. at 2442. In contrast, TVRJ's general members do not have any direct influence or control over who its directors are. In *Hunt*, only Washington's apple growers and dealers could serve on the Commission. *Id.* at 344, 97 S.Ct. at 2442. In contrast, the composition of TVRJ's board of directors is not limited to its general members. And in *Hunt*, only Washington's apple growers and dealers financed the Commission's activities, including the costs of the litigation that the Commission filed on their behalf, through mandatory assessments levied upon them. *Id.* at 344–45, 97 S.Ct. at 2442. In contrast, TVRJ's general members are not required to contribute financially to the organization; rather, any financial contributions they make are purely voluntary, and we

can find no evidence in our record showing either that TVRJ's general members play a substantial role in financing its activities generally or that they are financing this litigation specifically. Thus, the record before us demonstrates that TVRJ's general members possess none of the indicia of membership the Supreme Court identified in *Hunt*.

TVRJ argues, however, that this does not matter. According to TVRJ, *Hunt* does not require organizational plaintiffs without traditional members to establish that their purported members have voting rights or any other specific rights in the organization in order to satisfy the indicia-of-membership test. Rather, TVRJ contends, all the indicia-of-membership test requires it to show is that it provides its general members with the means to express their collective views and protect their collective interests. *See id.* at 345, 97 S.Ct. at 2442 (stating that "[i]n a very real sense ... the Commission represents [Washington's apple] growers and dealers and provides the means by which they express their collective views and protect their collective interests"). TVRJ argues that it provides its general members with the means to express their collective views and protect their collective interests because (1) its bylaws expressly provide general members with those rights and (2) general members have the right to support TVRJ financially through voluntary contributions.

In analyzing this argument, we find *Health Research Group v. Kennedy*, 82 F.R.D. 21, 22–28 (D.D.C. 1979), particularly instructive. There, Public Citizen, Inc., a nonprofit corporation that lacked traditional members, sought to establish associational standing on behalf of individuals whom it alleged contributed to and supported it. *Health Research Group*, 82 F.R.D. at 24. Public Citizen was run by a board of directors, the members of which were appointed by the organization's founder, and thus the organization's contributors and supporters had no direct control over it. *See id.* at 24, 27. Public Citizen maintained, however, that its contributors and supporters met *Hunt*'s indicia-of-membership test because they exerted indirect influence over its activities through their financial support and by voicing their views through written letters to the organization.[2] *Id.* The court rejected this argument, however, focusing specifically on the fact that Public Citizen's contributors and supporters had no ability to participate in selecting the organization's board of directors. The court stated,

> there is a material difference of both degree and substance between the control exercised by masses of [c]ontributors tending to give more or less money to an organization depending on its responsiveness to their interests, or through the expression of opinion in the letters of [s]upporters, on the one hand, and the control exercised by [m]embers of an organization as they regularly elect their governing body, on the other.

*Id.* at 27. The court concluded that the contributors and supporters lacked sufficient indicia of membership in the organization to support associational standing. *Id.* at 27–28.

The evidence here reveals that like Public Citizen in *Health Research Group*, TVRJ is governed by a self-perpetuating board of directors, the composition of which its general members play no role in selecting. In addition, the record reflects

---

2. Public Citizen argued that its contributors' and supporters' ability to contribute financially to the organization and to express their views to it gave them a "functional vote" in its operation. *Id.* at 24 n.8.

that the composition of TVRJ's board of directors is not restricted to its general members. And we find no evidence in our record showing that TVRJ's general members play a substantial role in financing its activities generally, let alone the financing of this litigation. We conclude that on this record, TVRJ's general members lack indicia of membership sufficient to confer standing upon TVRJ to represent them in this suit. *See Hunt*, 432 U.S. at 344–45, 97 S.Ct. 2442; *Health Research Group*, 82 F.R.D. at 27–28 (nonprofit corporation's contributors and supporters lacked indicia of membership because they played no role in selecting the members of the organization's board of directors); *see also Washington Legal Found.*, 477 F.Supp.2d at 209–11 (finding in the context of a request for a preliminary injunction that organization was unlikely to satisfy indicia-of-membership test where the record failed to demonstrate that the individuals it sought to represent (1) had voting rights or otherwise participated in selecting the organization's leadership; (2) served in the organization in any way; and (3) financially supported the organization).

In sum, we conclude that TVRJ has no traditional members and that the individuals it seeks to represent in this lawsuit have insufficient indicia of membership to confer associational standing upon TVRJ to bring this suit on their behalf. We therefore sustain the City's first issue.

### IV. DISPOSITION

 The City has requested that if we sustain its first issue, then we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing TVRJ's claims. *See* Tex. R. App. P. 43.2(c). At oral argument, TVRJ (as we understand it) disagreed with the City, arguing that if we were to sustain either of the City's issues, the appropriate

disposition would be to remand this case to the trial court to afford it the opportunity to amend its pleadings.

As we have already noted, in arguing that TVRJ has no members for purposes of associational standing, the City's first issue challenged the existence of a jurisdictional fact. The evidence relevant to that issue is undisputed and does not raise a fact question on the jurisdictional issue. We therefore conclude that, having sustained the City's first issue, the appropriate disposition is to reverse the trial court's order denying the City's plea to the jurisdiction and to render judgment dismissing TVRJ's claims for lack of subject-matter jurisdiction. *See Miranda*, 133 S.W.3d at 228 (stating that where a plea to the jurisdiction challenges a jurisdictional fact and "the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law"); *Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 395 (Tex. App.— Houston [14th Dist.] 2014, pet. denied) (reversing trial court's order denying appellant's plea to the jurisdiction and rendering judgment of dismissal where appellant negated the existence of a jurisdictional fact).

### V. CONCLUSION

We have sustained the City's first issue and concluded that it is dispositive of this appeal; thus, we do not reach the City's second issue. *See* Tex. R. App. P. 47.1. Having sustained the City's first issue, we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment granting the City's plea to the jurisdiction and dismissing TVRJ's claims against the City for lack of subject-matter jurisdiction. Tex. R. App. P. 43.2(c); *see*

*Miranda,* 133 S.W.3d at 228; *Coll. of the Mainland,* 436 S.W.3d at 395.