## COOK v. OIL CAPITOL BROADCASTING ASS'N et al.

### No. 6448.

Court of Civil Appeals of Texas. Texarkana.

Sept. 8, 1949.

Rehearing Denied Oct. 6, 1949.

Pollard, Lawrence & Reeves, Tyler, for appellant.

Ramey, Calhoun, Marsh, Brelsford & Sheehy, Tyler, for appellees.

LINCOLN, Justice. ·

The Oil Capitol Broadcasting Association was a partnership composed of James G. Ulmer, Tom Foster and Roy G. Terry. By warranty deed dated May 14, 1937, the land in controversy, lot 14 in Block 8 of the College Park Addition to the City of Kilgore, was conveyed to the partnership and to the three named partners. By instrument dated October 26, 1937, Foster quitclaimed his interest in said lot to Terry. On November 15, 1937, the three named partners filed with the Secretary of State their articles of incorporation for the purpose of incorporating the "Oil Capitol Broadcasting Association." The affidavit attached to the articles of incorporation as required by statute, and which was signed and sworn to by the incorporators, alleged that the capital stock of $15,000.00 "has been paid in by the transfer to said corporation by said incorporators of property of the reasonable cash market value of Fifteen Thousand and no/100 ($15,000.00) Dollars over and above incumbrances of every kind and nature." Also transmitted to the Secretary of State was a financial statement of the partnership as of November 15, 1937, made by H. C. Slife, chief engineer of the association. This financial statement shows assets in personal property of the value of $18,540.74, and also shows "transmitter house and lot," of the value of $3,700. Liabilities are shown to be $1,-469.49.

No instrument of writing was ever executed transferring or conveying any of the assets of the partnership to the corporation or to a trustee for the corporation. The "transmitter house and lot" mentioned in the financial statement is not described therein, but there is evidence from which the conclusion might be reached that the lot referred to is the lot in controversy and that the transmitter house was located on that lot. The documents filed with the Secretary of State did not represent that any of the assets shown in the financial statement had been or would be transferred to the corporation.

The charter was approved by the Secretary of State and the corporation continued to use the lot and improvements thereon up to the time of the judgment, December 14, 1948. The corporation still exists and

is engaged in the business of operating radio station KOCA at Kilgore.

Terry later acquired the title of Ulmer in said property and at the time of trial he claimed to be the sole owner of the lot in controversy. The lot was sold to R. H. Hedge on July 1, 1941 under an execution issued upon a judgment against the corporation. Appellant Cook claimed title to the lot by mesne conveyances into him. He filed his suit in trespass to try title in statutory form and also pleaded alternatively that the property became the property of the corporation by virtue of the articles of incorporation and the affidavits referred to. After a trial before the court judgment was rendered that the plaintiff take nothing by his suit. Findings of fact and conclusions of law were filed by the trial court, setting forth findings as above stated. The court also found that the stock was paid for by transfer to the corporation of assets belonging to the partners of the value of $18,540.74. It will be seen that this figure is arrived at by taking from the total assets of $22,240.74, the value of the transmitter house, $3,700. In other words, the finding of the trial court is that the property valued at $18,540.74 was personal property, and that the capital stock was paid for by transfer to the corporation of said personal property of the value stated. The trial court further finds that the transmitter house and lot, evidently referring to lot 14, was not conveyed to the corporation and that its conveyance was not necessary to complete full payment of the capital stock. A further finding of the trial court is that there was no evidence to show that the corporation ever at any time had legal or equitable title to lot 14, or that there was any writing or written memorandum contracting to convey said lot to the corporation. The court concluded that the plaintiff failed to meet the burden of proof that he had either legal or equitable title to the property. It is conceded by the parties that the legal title to the property at the time of the suit was in Terry, since no title had been conveyed out of Terry or the previous joint owners to the corporation. But appellant insists that the corporation acquired an equitable title to the property which, when levied upon and sold, passed by conveyance to appellant.

■■ If there was evidence to authorize the conclusion by the trial court, and if the trial court had in fact concluded, that lot 14 became an asset of the corporation as a part of its capital stock, but had not been conveyed to the corporation, an equitable title to the lot would have been in the corporation. But the trial court finds that there is no evidence of such fact necessary to create such equitable title and we sustain that finding. The affidavit of the incorporators is somewhat unique. It states that the capital stock "has been paid in by transfer to said corporation by said incorporators of property of the reasonable cash market value of Fifteen Thousand and no/100 ($15,000.00) Dollars over and above incumbrances of every kind and nature." That statement of the incorporators does not identify the property. The fact there stated is supported by the valuations of personal property. If from the total valuation of personal property we deduct the liabilities of $1,469.46, we still have a net valuation of personal property of $17,071.28. This was sufficient in amount to pay the capital stock of $15,000. The affidavit of the engineer, Slife, does not state what property was being transferred to the corporation. All that his affidavit shows is a financial statement of the partnership as of November 15, 1937. Testimony was given by the appellant by deposition, by Ulmer and by Hedge. None of these parties testified, and no other witness testified, that it was the intention of the partnership, or of the partners, to transfer and convey lot 14 to the corporation.

Article 1308, R.S. of Texas, requires that the affidavit of those who execute the charter shall be furnished to the Secretary of State, showing, among other things, "the cash value of any property received, giving its description, location and from whom and the price at which it was received." The affidavit does not state that the corporation is receiving or is to receive lot 14, its description and location are not given, nor is it shown in said affidavit from whom and the price at which it was received. The

affidavit of Mr. Slife does not meet these requirements.

 The personal property could be transferred by delivery only but the statute requires a conveyance in writing to transfer the legal title to real estate. Our statute further provides that the Secretary of State may require other evidence before he is required to receive and record the charter. Art. 1309, R.S. The Secretary of State could have required the incorporators to execute a deed to the corporation or to a trustee for the corporation to be held subject to approval of the charter. He could have required further affidavits from the incorporators that this particular property was to be conveyed to the corporation. None of this was done and the record is absent any evidence showing any obligation of the incorporators to transfer this particular lot to the corporation as a part of its capital assets.

 Nor is there any evidence to support a contract to convey. No writing or memorandum of any kind appears in the record to that effect. Nor is there any evidence of a parol agreement to convey. The evidence affirmatively shows that the corporation had made no permanent nor valuable improvements upon the property, and such evidence is necessary to pass an equitable title by parol.

 Appellant urges that the appellee is estopped to deny the equitable title in the corporation by reason of the facts already stated. The trial court found that the facts are not sufficient to create an estoppel. We sustain that finding. There is no evidence that the appellant consulted the records on file in the office of the Secretary of State before he bought the property. He could not have been misled by any of that record. Had he examined such record he would have discovered that there was no conveyance nor contract to convey from Terry and the other owners of the lot to the corporation. He stated by deposition that before he bought the property he did not obtain an abstract of title but that he examined the records in the office of the County Clerk of Gregg County. If he did so he must have discovered that the corporation did not have legal title to the property but that such title at that time was in

Terry. It is in evidence that he was informed by an attorney who handled the sale to him that Terry was in possession of the property, and that the corporation had never gotten possession. Notwithstanding the records of the county clerk's office and of the information given him by this attorney, he bought and paid for the property. We find no sufficient elements of estoppel against Terry or the corporation to warrant this court in reversing the trial court on this issue.

These are the only two issues involved in the suit, and finding no error in the judgment of the trial court, such judgment is affirmed.

Judgment affirmed.