

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00191-CV

_____

LOIS J. BLANTON, Appellant

V.

RED DESERT ENTERPRISES, LLC AND CHERYL MILES, Appellees

---

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-319980-20

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In this lawsuit involving claims of adverse possession and conversion, Appellant Lois J. Blanton appeals the order granting the plea to the jurisdiction of Appellees Red Desert Enterprises, LLC and Cheryl Miles. In five issues, Blanton complains that the plea to the jurisdiction should have been denied because (1) any defect in her standing to bring her adverse possession claim was cured by the subsequent execution of a document, (2) she raised a fact issue regarding her standing to bring her conversion claim, (3) any defect in her standing to bring her conversion claim was cured by the subsequent execution of a document, and (4) and (5) the trial court abused its discretion by sustaining Appellees' objections to certain testimony in declarations filed in opposition to the plea to the jurisdiction. Because we find that Blanton did not have standing to assert her adverse possession claim at the time the lawsuit was filed but that there is a fact issue regarding standing to bring her conversion claim, we will affirm in part and reverse and remand in part.

## II. BACKGROUND

### A. Ownership of the Contested Property, Adjacent Property, and Equipment

This lawsuit involves two pieces of real property—the Contested Property and the Adjacent Property—consisting of a total of approximately 3.920 acres.[1] The

---

[1]At various times in the record, the parties reflect slightly different numbers for the acreage of the Contested Property and the Adjacent Property. The number 3.920 acres is taken from the metes and bounds description.

Contested Property is commonly known as 3711 N. Grove Street, Fort Worth, Texas, and was conveyed by the Blanton Family Partnership L.P. (BFP) to Keystone Exploration, Ltd. in January 2008. When the Contested Property was transferred, BFP retained ownership of 1.397[2] acres of land—the Adjacent Property—commonly referred to as 3701 N. Grove Street.

Three days after acquiring the Contested Property, Keystone conveyed it to XTO Energy, Inc. In August 2020, XTO sold the Contested Property to Miles, who then transferred the property to Red Desert one month later. As to the Adjacent Property, BFP conveyed it to Blanton on January 15, 2020, "to be effective as of" January 1, 2020.

On October 6, 2022—after the lawsuit was filed—two documents were signed by BFP that purported to convey certain real and personal property to Blanton.[3] In the "Blanket Conveyance, Bill of Sale and Assignment" (Blanket Conveyance), BFP purported to transfer to Blanton "all of the equipment it owns" located on the Contested Property and the Adjacent Property "to be effective as of January 1, 2020." In a document entitled "Conveyance and Assignment" (Conveyance), BFP stated that it "acquired ownership" of the Contested Property "on or about January 28, 2018

---

[2]On appeal, all parties agree that the Adjacent Property consists of 1.397 acres.

[3]Blanton concedes that neither document was signed until October 6, 2022. Indeed, at her deposition, she agreed that this was the execution date. On appeal, Blanton states "that there is no dispute that the *Conveyance and Assignment* memorializing BFP's transfer of the Contested Property (and the adverse possession claim) to Appellant was signed on October 6, 2022 (footnote omitted)."

3

through adverse possession" and "grant[ed], convey[ed] and quitclaim[ed]" the Contested Property to Blanton "effective as of January 1, 2020." In addition, it conveyed to Blanton "any and all claims, including by way of example and not limitation, claims for adverse possession" that it may have to the Contested Property.

An industrial building occupies a portion of both properties. The northern half is on the Contested Property, and the southern half is on the Adjacent Property.

## B. The Litigation

On September 18, 2020, Blanton sued XTO and Texas Resource and Recycling, Inc. for declaratory relief, alleging title to the Contested Property by adverse possession. Blanton later added Red Desert and Miles as defendants and nonsuited the claims against XTO and Texas Resource. Red Desert and Miles were the only defendants at the time the ninth amended petition—the live pleading—was filed.

In her live pleading, Blanton asserted that since Keystone's sale of the Contested Property to XTO, Blanton "and her predecessors in interest – principally, [BFP] and American Commodities, Inc." have used the Contested Property for business purposes. Specifically, Blanton alleged that from 2001 to March of 2018, American Commodities operated a fats and oils recycling operation on the Contested Property. Then, in 2018, she stated that Tazer Group acquired the assets of American Commodities and began operating on the property. According to Blanton, KFG Financial Services, LLC operated within the office building on the Contested Property

4

"from at least 2015 to 2018[,]" and Mesa Processing, Inc. "maintained a processing area on the Contested Real Property from 2008 to 2018." Blanton further alleged that based on these entities' "conduct [that] was long-continued, open, notorious, exclusive and inconsistent with the existence of title in others[,]" as well as the maintenance and repair made to the building and the payment of utilities, she had title by adverse possession. Further, she contended that Red Desert and Miles had converted certain equipment, including "air compressors, air scrubbers, centrifuges, evaporators, pumps and vacuum equipment, shakers, e-panels for the shakers, variable frequency drives and platforms."

Red Desert and Miles answered the lawsuit, and they later moved for summary judgment. As part of her summary judgment response, Blanton attached the Conveyance and Blanket Conveyance. After the motion for summary judgment was denied, Red Desert and Miles filed their joint plea to the jurisdiction, arguing that "[a]t the time of filing suit on September 18, 2020," Blanton "did not even have an arguable 'ownership' interest (by claimed adverse possession) in the Contested Property." According to the plea, it was only after suit was filed and Appellees filed their motion for summary judgment that Blanton "realized the defect and on October 6, 2022, [BFP] executed putative documents attempting to transfer any interest in the Contested Property" to her. Therefore, Appellees contended that "at the time of original filing of suit, [Blanton] lacked standing and the Court did not acquire, and does not have, subject matter jurisdiction."

Blanton filed a response to the plea, arguing that the court should deny the plea for two reasons. First, she argued that "any defects in [her] standing to bring her adverse possession claim that may have existed when she initially filed this action have since been cured and the Court should take into consideration facts that develop after the initial filing of a lawsuit to determine standing." Second, she contended that the trial court should not dismiss her "conversion claim because standing must be determined separately for each cause of action in a lawsuit and [she] has presented sufficient evidence to raise, at a minimum, a fact question that she owns the equipment that is the subject of her conversion claim." Attached to the response were declarations from Blanton and her daughter, Krista Blanton-Gursky.

The trial court held a hearing on the plea to the jurisdiction. At the hearing, Appellees objected to parts of both of the declarations. The trial court gave Blanton three days to file a response to the objections. At the conclusion of the hearing, the trial court took the matter under advisement. Thereafter, Appellees filed an additional plea to the jurisdiction that only addressed the conversion claim. The second plea to the jurisdiction was never set for hearing.[4]

---

[4]In her brief, Blanton states that "Appellees never obtained a hearing on their Second Plea to the Jurisdiction and it was rendered moot when the Trial Court granted the original Plea to the Jurisdiction." Indeed, the record reflects a ruling on only the first plea to the jurisdiction.

Later, the trial court signed orders ruling on the objections,[5] granting the first plea to the jurisdiction, and dismissing Blanton's lawsuit without prejudice for lack of subject-matter jurisdiction. This appeal followed.

### III. DISCUSSION

In three of her five issues on appeal, Blanton complains about the trial court's order granting the plea to the jurisdiction on her adverse possession claim (first issue) and conversion claim (second and third issues). In the fourth and fifth issues, Blanton argues that the trial court abused its discretion by sustaining certain objections to statements in the two declarations attached to her response to the plea to the jurisdiction.

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction de novo. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015). We likewise review questions of standing de novo. *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). In assessing standing, we look primarily to the pleadings and consider relevant evidence

---

[5]Objections were sustained to four paragraphs, two of which form the basis of Blanton's fourth and fifth issues on appeal.

of jurisdictional facts when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). We construe the plaintiff's pleadings liberally, taking all assertions as true, and look to the plaintiff's intent. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If a plea to the jurisdiction challenges the existence of jurisdictional facts, we may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.* at 227. We review the evidence in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 221, 227–28).

**B. Law Regarding Standing**

Standing is a component of subject-matter jurisdiction. *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015); *see DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) ("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it."); *Miranda*, 133 S.W.3d at 228 ("[A] court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided."). It is a "constitutional prerequisite to suit." *Heckman*, 369 S.W.3d at 150 (citing *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 915 (Tex. 2010)). Standing "requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Id.* at 154 (citing *DaimlerChrysler Corp.*, 252 S.W.3d at 307).

8

"A court must dismiss a claim if the plaintiff lacks standing to assert it, and it must dismiss the entire action for want of jurisdiction if the plaintiff lacks standing to assert any of its claims." *Bray v. Fenves*, No. 06-15-00075-CV, 2016 WL 3083539, at \*4 (Tex. App.—Texarkana Mar. 24, 2016, pet. denied) (mem. op.) (citing *Heckman*, 369 S.W.3d at 150–51). Standing is a threshold jurisdictional issue that parties may raise by a plea to the jurisdiction. *Busbee v. Cnty. of Medina*, 681 S.W.3d 391, 395 (Tex. 2023).

"Standing is determined at the time suit is filed in the trial court, and subsequent events do not deprive the court of subject matter jurisdiction." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993). It must exist at the time a plaintiff files suit and must continue to exist at every stage of the legal proceedings, including the appeal. *La Tierra de Simmons Familia, Ltd. v. Main Event Ent., LP*, No. 03-10-00503-CV, 2012 WL 753184, at \*4 (Tex. App.—Austin Mar. 9, 2012, pet. denied) (mem. op.). If the plaintiff lacks standing at the time suit is filed, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing. *Id.* "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 14 (Tex. 2011) (quoting *Davis v. FEC*, 554 U.S. 724, 734, 128 S. Ct. 2759, 2769 (2008)).

## C. Application of Law to Facts

### 1. Adverse Possession Claim

In her live pleading, Blanton stated that she "and [h]er [a]ffliates" had occupied the Contested Property since the sale of the property to XTO, which occurred in January 2008. Blanton alleged that since that time, she "and her predecessors in interest – principally, [BFP] and American Commodities, Inc." had used the Contested Property for business purposes. As Blanton explained,

> Multiple Blanton entities utilized the Contested Real Property prior to and following the conveyance from Keystone to XTO. From 2001 to March of 2018, American Commodities operated a fats and oils recycling operation on the Contested Real Property. In 2018, Tazer Group acquired the assets of American Commodities and began operating on the Contested Real Property. KFG Financial Services, LLC, which provided loans and refinancing, operated within the office building located on the Contested Real Property from at least 2015 to 2018. Additionally, Mesa Processing, Inc. . . . maintained a processing area on the Contested Real Property from 2008 to 2018. The Blanton family entities' interest in the property subsequently passed to [Blanton].

According to Blanton, while the Contested Property was being used, "Blanton family affiliates, including specifically American Commodities, have maintained, repaired, made significant improvements to, and added on to the building located on both properties." She further stated that, since at least 2008, the Contested Property has been "fenced and gated with locks for which only [Blanton], her affiliates, or their lessee, Texas Resources and Recycling, LLC, have had keys." Moreover, according to Blanton, she "and her affiliates" have paid utilities on both the Contested and

10

Adjacent Properties, and the use of the Contested Property "has been actual, continuous, visible, exclusive, open, notorious, and hostile."

In their plea to the jurisdiction, Appellees noted that while Blanton acquired title to the Adjacent Property by deed from BFP "on or about January 15, 2020," Blanton had no claim by title or adverse possession to the Contested Property until the Conveyance was executed on October 6, 2022. As explained by Appellees,

> At the time of filing suit on September 18, 2020, [Blanton] did not even have an arguable "ownership" interest (by claimed adverse possession) in the Contested Property at 3711 N. Grove St. It was only *after* [Appellees] filed motions for summary judgment that [Blanton] realized the defect and on October 6, 2022, [BFP] executed putative documents attempting to transfer any interest in the Contested Property to [Blanton]. . . . As a result, at the time of original filing of suit, [Blanton] lacked standing and the Court did not acquire, and does not have, subject matter jurisdiction.

While the Conveyance and Blanket Conveyance stated that they had an effective date predating the filing of suit, Appellees noted that it was undisputed that the documents were not executed until October 6, 2022. Therefore, according to the plea to the jurisdiction, at the time of filing suit, Blanton lacked standing.

Any transfer of a real property interest by Blanton's predecessors was required to be in writing. *See Yarbrough v. Brooks*, No. 14-19-00748-CV, 2021 WL 3922934, at *5 (Tex. App.—Houston [14th Dist.] Sept. 2, 2021, no pet.) (mem. op.) ("A conveyance of an interest in real property must (1) be in writing; (2) be signed by the grantor; and (3) be delivered to the grantee."). Once title by limitations has matured, a transfer of real property cannot be done orally; it can only be conveyed by an

11

instrument in writing. *Haby v. Howard*, 757 S.W.2d 34, 38 (Tex. App.—San Antonio 1988, writ denied); *see* Tex. Prop. Code Ann. § 5.021 ("A conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or the conveyor's agent authorized in writing."); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.026(a) (establishing a ten-year limitations period "to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property").

While Blanton contended that execution of the Conveyance and Blanket Conveyance cured any standing issue, Appellees argued that Texas law is to the contrary, as set out in the case of *Polk v. Seven Thirds Holdings, LLC*, which addressed a situation similar to that found here. No. 06-20-00033-CV, 2020 WL 7483955 (Tex. App.—Texarkana Dec. 21, 2020, no pet.) (mem. op.). In *Polk*, the trial court denied the plea to the jurisdiction where the plaintiff had no ownership interest in the property at the time of the original filing of suit but had purportedly cured the defect by securing a warranty deed that claimed to have an "effective date of August 1, 2017" even though it was executed on August 19, 2019. *Id.* at *2–3. Concluding that plaintiff's back-dated deed was not enough to cure the standing issue and that the trial court was therefore without subject-matter jurisdiction, the court of appeals stated,

> The owners of Block 13 at the commencement of this lawsuit were
> Robert Clayton Allen and Edythe Allen, d/b/a STH. As such, they were
> the only persons who had standing to bring the claims asserted in the
> lawsuit. Yet, Robert Clayton Allen and Edythe Allen, d/b/a STH, were

never joined or named as plaintiffs in an amended petition. Rather, the plaintiff who intended to sue in the lawsuit was STH, LLC, which had no ownership interest in Block 13 at the time the lawsuit was filed and, consequently, had no standing to bring the lawsuit. Although it filed an amended petition alleging its acquisition of Block 13 months after it filed the lawsuit, this later-acquired title did not retroactively confer standing to assert the claims asserted in this lawsuit.

*Id.* at *7. Therefore, the court of appeals dismissed STH, LLC's claims against Polk, without prejudice. *Id.* at *8.

Here, the Conveyance was executed on October 6, 2022, but purported to have an effective date of January 1, 2020. Similar to *Polk*, this is insufficient to cure the standing issue. *See La Tierra de Simmons Familia, Ltd.*, 2012 WL 753184, at *4 (stating that "[s]tanding must exist at the time a plaintiff files suit"); *see also McMillan v. Aycock*, No. 03-18-00278-CV, 2019 WL 1461427, at *3 (Tex. App.—Austin Apr. 3, 2019, no pet.) (mem. op.) ("Pleading additional facts that describe events occurring after suit was filed . . . would not operate to cure the jurisdictional defect. A trial court's jurisdiction is determined when a suit is filed; at that time the court either has jurisdiction or it does not."); *City of Westworth Vill., Tex. v. Tex. Voices for Reason and Justice, Inc.*, 520 S.W.3d 652, 655 (Tex. App.—Fort Worth 2017, judgm't vacated w.r.m.) ("Standing is determined at the time suit is filed; if a plaintiff lacks standing at the time suit is filed, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing."); *Okland v. Travelocity.com, Inc.*, No. 2-08-260-CV, 2009 WL 1740076, at *7 (Tex. App—Fort Worth June 18, 2009, pet. denied) (mem. op.) ("Because no named putative class representative had standing to pursue

13

his or her claims against Travelocity at the time suit was filed, the trial court lacked subject matter jurisdiction to hear the case, including Rogers's subsequently filed claims."); *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 703 (Tex. App.—Fort Worth 2006, pet. denied) (stating that because appellant "lacked standing at the time the action was filed, the suit must be dismissed even if he later acquired an interest sufficient to support standing"), *overruled on other grounds by Revell v. Morrison Supply Co., LLC*, 501 S.W.3d 255 (Tex. App.—Fort Worth 2016, no pet.); *Bell v. Moores*, 832 S.W.2d 749, 754 (Tex. App.—Houston [14th Dist.] 1992, writ denied) ("A trial court determines its jurisdiction at the time a suit is filed. At that time, the court either has jurisdiction or it does not. Jurisdiction cannot subsequently be acquired while the suit is pending.").

Blanton asserts that the inability to "cure" standing once a lawsuit is filed "embraces form over function" and requires her "to start the whole process over in a new lawsuit."[6] She also points to a number of federal cases that "have rejected the no-cure rule in favor of allowing a defect in standing to be cured based on events subsequent to the original filing of the lawsuit." *See, e.g., Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 391–92 (2d. Cir. 2021), *cert. denied*, 142 S. Ct. 757 (2022); *Scahill v. D.C.*, 909 F.3d 1177, 1183–84 (D.C. Cir. 2018); *U.S. ex rel Gadbois*

---

[6]Blanton notes that she "re-filed her adverse possession and conversion claims" within sixty days after the trial court granted the plea to the jurisdiction "out of an abundance of caution and to avoid the expiration of the statute of limitations." Those claims are pending in a different trial court.

14

*v. PharMerica Corp.*, 809 F.3d 1, 5 (1st Cir. 2015); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1046 (9th Cir. 2015); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008).

However, arguments of "common sense" and the requirement of a "meaningless dismissal and subsequent refiling" have previously been rejected by our sister court in favor of "the long-standing principle that standing must exist at the inception of the suit." *Sw. Airlines Pilots Ass'n v. Boeing Co.*, No. 05-20-01067-CV, 2022 WL 951027, at *3 (Tex. App.—Dallas Mar. 30, 2022, pet. filed) (mem. op.). Moreover, we are not free to disregard decisions of our court unless they have been superseded by the supreme court, an en banc decision of the court of appeals itself, or an applicable legislative or constitutional provision. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256–57 (Tex. 2022) (holding that "lower courts must follow the precedents of all higher courts" and "three-judge panels must follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision").

Here, Blanton had no interest in the Contested Property at the time the lawsuit was filed. Therefore, she had no standing to bring the suit for adverse possession, and the trial court did not err in granting the plea to the jurisdiction on that claim because it lacked subject-matter jurisdiction. Accordingly, we overrule Blanton's first issue.

## 2. Conversion Claim

Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971)). The elements of a conversion claim are: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed or exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Id.* at 386–87. Element one—ownership or entitlement to possession—is central to the standing issue in this case.

With regard to the conversion claim, Blanton's pleadings alleged that she "and her affiliates have operated continuously a large amount of equipment" in the building which is located on the Contested Property. "This equipment includes air compressors, air scrubbers, boilers, tanks, centrifuges, evaporators, pumps and vacuum equipment, as well as laboratory equipment and other equipment in the garage, all of which cost not less than several hundred thousands of dollars." According to Blanton, Appellees "have wrongfully exercised dominion and control over certain equipment and other personal property that was previously used by Blanton-affiliated entities in the conduct of their business" on the Contested Property.

16

Appellees' first plea to the jurisdiction failed to specifically address Blanton's standing to assert her conversion claim. Rather, it generally alleged that the issue was whether "Blanton, at the time of original filing, had standing to file the suit" and focused on the fact that Blanton "had no interest in the Contested Property at the time the lawsuit was filed."

Our review is generally limited to the grounds set forth in a plea to the jurisdiction before the trial court, *City of Dall. v. Turley*, 316 S.W.3d 762, 774 (Tex. App.—Dallas 2010, pet. denied), and a court must assess standing "claim by claim," *Heckman*, 369 S.W.3d at 153. Here, the conversion claim was not specifically addressed until the second plea to the jurisdiction, which was neither set for hearing nor ruled upon by the trial court.

However, even if the first plea to the jurisdiction is construed as addressing the conversion claim, Blanton contends that the critical difference between her adverse possession claim and her conversion claim is that "the adverse possession claim involves *real* property, [but] the conversion claim involved *personal* property," and a transfer of personal property does not have to be in writing. *See Cook v. Oil Capitol Broad. Ass'n*, 223 S.W.2d 530, 533 (Tex. App.—Texarkana 1949, writ ref'd n.r.e.) ("The personal property could be transferred by delivery only but the statute requires a conveyance in writing to transfer the legal title to real estate."). Blanton argues that evidence in the two declarations attached to her response to the plea—even after excluding the paragraphs to which the trial court sustained objections—raises a fact

17

issue as to whether BFP made a parol transfer of the equipment to Blanton in January 2020, and thus, gave her standing to assert the conversion claim.

Excluding the parts of the declaration to which the trial court sustained the objections, Blanton's declaration provided:

- Blanton was a limited partner in BFP;

- Blanton's CPA advised to have BFP transfer to her the Adjacent Property, the Contested Property, and the equipment, which Blanton describes as "certain equipment and other personal property that is now the subject of [her] conversion claims at issue in this lawsuit, which includes air compressors, air scrubbers, centrifuges, evaporators, pumps and vacuum equipment, shakers, e-panels for the shakers, variable frequency drives, and platforms";

- Blanton and BFP considered the equipment as having been transferred to her since January 2020, and both have treated the equipment as if it had been transferred since January 2020; and

- BFP transferred its interest in the Contested Property and the equipment to Blanton at the same time that it transferred its interest in the Adjacent Property.

The relevant parts of Blanton-Gursky's declaration provided:

- Blanton-Gursky was the President of TBB Lemn8r, Inc., which is the general partner of BFP;

- Blanton-Gursky served as the President and CEO of American Commodities, Inc.;

- Blanton-Gursky was the President and CEO of Tazer Group, LLC;

- After January 28, 2008, American Commodities, which is a Blanton family affiliated entity, acquired certain equipment and other personal property at issue in this lawsuit, which included air compressors, air scrubbers, centrifuges, evaporators, pumps and vacuum equipment, shakers, e-panels for the shakers, variable frequency drives, and platforms;

18

- American Commodities used the equipment in the conduct of its business on the Contested Property;

- The equipment subsequently passed to BFP on or about March 30, 2018, when BFP acquired the equipment through the foreclosure on the equipment as collateral securing a note that American Commodities owed to BFP;

- Upon the advice of Blanton's CPA, BFP transferred its interest in the Contested Property and the equipment to Blanton at the same time that BFP transferred its interest in the Adjacent Property;

- BFP has considered the equipment as having been transferred to Blanton since January 2020, and both have treated the equipment as if it had been transferred since January 2020; and

- The equipment is located on the Contested Property.

Considering the evidence in the light most favorable to Blanton, *see Town of Shady Shores*, 590 S.W.3d at 550, we conclude that the statements in the two declarations were sufficient to raise a material fact issue on Blanton's interest in the equipment at the time suit was filed and gave her standing to pursue the conversion claim; thus, the trial court was required to deny Appellees' plea as to that claim, *see Schmitz v. Denton Cnty. Cowboy Church*, 550 S.W.3d 342, 362 (Tex. App.—Fort Worth, 2018, pet. denied) (mem. op. on reh'g) (holding appellant raised a material fact issue regarding his standing and the ripeness of his injury, which required the trial court to deny appellee's plea based on standing); *Wolfe v. Devon Energy Prod. Co., LP*, 382 S.W.3d 434, 453 (Tex. App.—Waco 2012, pet. denied) (holding that a statement in an affidavit that appellant "paid for the property" along with a metes and bounds

description of the property raised a fact issue as to appellant's interest in the property and, thus, his standing).

Accordingly, we sustain Blanton's second issue. Because we sustain her second issue, we need not address her third issue arguing that execution of the Blanket Conveyance cured any standing defect in her conversion claim as it is not necessary to the disposition of the appeal. *See* Tex. R. App. P. 47.1; *Lance v. Robinson*, 543 S.W.3d 723, 740 (Tex. 2018) ("Rule 47.1 requires only that the court of appeals address issues necessary to dispose of the appeal.").

In her fourth and fifth issues, Blanton challenges the trial court's order sustaining the objections to two paragraphs in the declarations—paragraph sixteen of Blanton-Gursky's declaration and paragraph ten of Blanton's declaration. Both paragraphs stated that Blanton "remains the owner of the [e]quipment." While we generally review a trial court's decision to admit or exclude evidence for an abuse of discretion, *see Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020), we need not decide if the trial court abused its discretion in sustaining the objections because, as stated above, other parts of the declarations state essentially the same thing and a ruling is not necessary to dispose of this appeal. *See* Tex. R. App. P. 47.1; *Lance*, 543 S.W.3d at 740.

## IV. CONCLUSION

Having overruled the first issue, we affirm the trial court's order granting the plea to the jurisdiction as to the adverse possession claim. After sustaining the second

issue and not reaching the third, fourth, and fifth issues, we reverse the trial court's order granting the plea to the jurisdiction as to the conversion claim and remand for further proceedings.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  May 2, 2024